

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 02-20108-CIV-Ungaro-Benages
Magistrate Judge Brown

VAN ECK EMERGING MARKETS
OPPORTUNITY FUND, L.P.,

          Plaintiff/Garnishor,

v.

REPUBLIC OF NICARAGUA,

          Defendant.

_____/

## GARNISHEE SWEDTEL AB'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED MOTION FOR ISSUANCE OF WRIT OF GARNISHMENT AFTER JUDGMENT

Garnishee Swedtel AB files this Reply in support of its Motion to Dismiss, for lack of personal jurisdiction, Van Eck Emerging Markets Opportunity Fund, L.P.'s ("Van Eck") Second Amended Motion for Issuance of Writ of Garnishment after Judgment ("Second Amended Motion for Writ of Garnishment"), and says:

### OVERVIEW

This is a garnishment action.  It is not a breach of contract action, or a negligence action, or any other type of civil action attempting to impose *liability* against Swedtel AB, a non-resident corporation.  Van Eck has not alleged – nor can it – that Swedtel AB has injured it or engaged in any wrongdoing for which it should be held liable.  Rather, Van Eck initiated these garnishment proceedings to collect a money judgment from Swedtel AB simply because it believes Swedtel AB

may owe money to the Nicaraguan government, the defendant in the underlying action.

But Van Eck has not shown – nor can it – that Swedtel AB is subject to this Court's jurisdiction.  This Court dismissed Van Eck's first two attempts to obtain a writ of garnishment because it had not alleged facts sufficient to invoke personal jurisdiction over Swedtel AB under an alter-ego theory of jurisdiction (D.E. 50, 61). After having conducted jurisdictional discovery, which this Court permitted after dismissing Van Eck's first amended motion for writ of garnishment (D.E.61), Van Eck still cannot allege facts sufficient to subject Swedtel AB to the jurisdiction of this Court under an alter-ego theory.  Its Second Amended Motion for Writ of Garnishment and the memorandum filed in opposition to Swedtel AB's motion to dismiss fail to assert facts showing that (1) Swedtel AB is the alter-ego of its Florida subsidiary, Swedtel, Inc.[1] and (2) Swedtel AB had formed or used Swedtel, Inc. for an improper purpose.  For these reasons, Swedtel AB has moved to dismiss Van Eck's Second Amended Motion for Writ of Garnishment and has filed this Reply in support of its Motion to Dismiss.[2]

## ARGUMENT

### THIS COURT SHOULD DISMISS, WITH PREJUDICE, VAN ECK'S SECOND AMENDED MOTION FOR WRIT OF GARNISHMENT BECAUSE IT FAILS TO SUFFICIENTLY ALLEGE ANY BASIS FOR INVOKING PERSONAL JURISDICTION OVER SWEDTEL AB

As this Court recognizes, the Florida courts have established a limited exception to Florida's long-arm statute.   Under this limited exception, a foreign corporation may be subject to personal jurisdiction in Florida if the party seeking to invoke this Court's jurisdiction alleges facts demonstrating that the foreign

---

[1] In July 2002, Swedtel, Inc. was voluntary dissolved and is no longer conducting business in Florida.

[2] Swedtel AB incorporates by reference hereto the arguments raised and legal authorities cited in its Motion to Dismiss Van Eck's Second Amended Motion for Writ of Garnishment.

corporation's domestic subsidiary is its "alter-ego" or "mere instrumentality" ***and*** the foreign corporation acted improperly in forming or using the domestic subsidiary. See Bellairs v. Mohrmann, 716 So. 2d 320, 322-23 (Fla. 2d DCA 1998). But because Van Eck, the moving party, has again failed to meet its burden, this Court cannot invoke personal jurisdiction over Swedtel AB.

**POINT I**

**AFTER CONDUCTING JURISDICTIONAL DISCOVERY, DURING WHICH THOUSANDS OF PAGES OF DOCUMENTS WERE DISCLOSED, VAN ECK STILL HAS NOT ALLEGED FACTS SUFFICIENT TO DEMONSTRATE THAT SWEDTEL, INC. IS THE "MERE INSTRUMENTALITY" OF SWEDTEL AB**

In response to Van Eck's discovery requests, Swedtel AB produced thousands of pages of documents, responded to requests for admissions, and answered interrogatories. After engaging in discovery, the ***most*** Van Eck has done is add a few new "facts" and seven new "exhibits" to "support" the same arguments that it has made since its initial motion for issuance of a writ of garnishment – i.e. that Swedtel AB controlled Swedtel, Inc. But none of these "facts" or "exhibits" lend significant, additional support to Van Eck's contention that Swedtel AB controlled Swedtel, Inc. to the extent that it can be said that Swedtel, Inc. was the "mere instrumentality" of Swedtel AB.

As Swedtel AB has steadfastly maintained, Van Eck has failed to alleged facts sufficient to demonstrate that Swedtel AB exercised any control greater than that normally associated with common ownership. See In re Latex Gloves Prod. Liab. Litig., No. MDL 1148, 2001 WL 964105 at *3 (E.D. Pa. Aug. 22, 2001) (holding that to prevail on an alter-ego theory of personal jurisdiction, the plaintiff must demonstrate that the degree of control exercised by the parent is "greater than normally associated with common ownership and directorship"). The additional information Van Eck obtained through jurisdictional discovery does not change the end result – Van Eck's factual allegations are still insufficient to show that Swedtel, Inc. was the "alter-ego" or "mere instrumentality" of Swedtel AB.

As Swedtel AB argued in its Motion to Dismiss Van Eck's Second Amended Motion for Writ of Garnishment, Swedtel AB merely provided its subsidiary with administrative support, such as financial assistance, because Swedtel, Inc. was not able to collect sufficient revenues on its own.  (Mot. Dismiss at 7.)  By providing such support, Swedtel AB helped its subsidiary meet its financial obligations.  Such support, however, does not mean that Swedtel AB "controlled" Swedtel, Inc. and, thus, is not sufficient to subject Swedtel AB to this Court's jurisdiction.  See Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 945 (7th Cir. 2000).

The same is true for Van Eck's assertion that a "common board of directors" and "common logo" suggest the requisite degree of control.  That the same person serves on the boards of directors for both the parent and subsidiary corporation is not uncommon.  See In re Latex Gloves, 2001 WL 964105, at *4 (noting that where a parent company owns one hundred percent of the stock of its subsidiary it is to be expected that the boards for both corporations will share common directors).  And it does not render the subsidiary corporation the mere instrumentality of the parent.  See Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1068 (M.D. Pa. 1993).

Neither does a common marketing logo render the subsidiary the mere instrumentality of the parent corporation.  See J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) (holding that common promotional images on a webpage are not sufficient to show that a parent controls the marketing policies of the subsidiary).  Thus, Van Eck's contentions that (1) Swedtel AB's webpage does not distinguish the two companies; (2) pens and pencils do not distinguish the two companies; and (3) Swedtel AB used labels with Swedtel, Inc.'s office address, merely show that Swedtel AB made an advertising decision to not draw a corporate distinction on its marketing and promotional materials.  Swedtel

4

AB's marketing decision does not mean, however, that Swedtel AB "controlled" Swedtel, Inc.[3]

After having conducted discovery, Van Eck has not provided this Court with any information demonstrating that Swedtel AB controlled Swedtel, Inc. to the point necessary to conclude that Swedtel, Inc. was Swedtel AB's alter-ego. Its arguments and factual allegations are essentially the same. Therefore, Van Eck, again, has failed to satisfy its burden under the first prong of the alter-ego jurisdictional analysis.

**POINT II**

**VAN ECK, AGAIN, HAS FAILED TO ALLEGE ANY FACTS DEMONSTRATING THAT SWEDTEL AB ENGAGED IN IMPROPER CONDUCT IN THE FORMATION OR USE OF SWEDTEL, INC.**

**A.      Van Eck's Reliance On _Woods v. Jorgenson_ Is Misplaced**

As it has done in its previous two motions for writ of garnishment, Van Eck relies primarily on <u>Woods v. Jorgensen</u>, 522 So. 2d 935 (Fla. 1st DCA 1988), for the proposition that because Swedtel, Inc. appears to be a "shell corporation," Swedtel AB has acted improperly. But in so arguing, Van Eck ignores this Court's ruling that <u>Woods</u> does not stand for this proposition, and even if it did, it would "fly in the face of the substantial majority of the cases" to the contrary. (D.E. 50, at 2.) As this Court recognized, the majority of cases in Florida require allegations **_and_** proof of "improper conduct" or wrongdoing before personal jurisdiction may be invoked over a non-resident defendant under an alter-ego theory. <u>See, e.g.</u>, <u>McFadden Ford, Inc. v. Mancusso</u>, 766 So. 2d 241, 243 (Fla. 4th DCA 2000) (holding that without allegations and proof of wrongdoing, plaintiffs could not obtain personal jurisdiction over a non-resident defendant on an alter-ego theory of jurisdiction); <u>Aldea</u>

---

[3] Van Eck's reliance on a BellSouth telephone bill, which provides, in the upper-right hand corner, "Bernt Nilsson dba Swedtel A*B" does not establish anything other than customer accounting information used by BellSouth. (Ex. 11 to Van Eck's Opposition Memorandum.)

5

Communications, Inc. v. Gardner, 725 So. 2d 456, 457 (Fla. 2d DCA 1999) (holding that because plaintiff failed to allege improper conduct, such as fraud on the part of the president in the formation and use of the corporation, it had not established an alter-ego basis for jurisdiction); Hobbs v. Don Mealy Chevrolet, Inc., 642 So. 2d 1149, 1156 (Fla. 5th DCA 1994) (holding that without evidence that a non-resident subsidiary corporation was formed or used for an illegal, fraudulent or other unjust purpose, the mere fact that a Florida corporation and resident owned and controlled the subsidiary was insufficient to subject the subsidiary to jurisdiction in Florida); Barkett v. Hardy, 571 So. 2d 13, 14 (Fla. 2d DCA 1990) (holding that absent evidence of wrongdoing, fact that corporate formalities were not observed, that corporation was a vehicle for personal interest of shareholder, that corporation lacked equity capital and was a shell, and that corporate affairs were dominated by another person or entity were not sufficient to pierce the corporate veil). See also Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla. 1984) (holding that a party cannot pierce the corporate veil of a corporation without showing that the defendant engaged in improper conduct in the formation and use of the corporation); Advertects, Inc. v. Sawyer Indus., Inc., 84 So. 2d 21, 23-24 (Fla. 1955) (explaining that because one or two individuals own the stock of a corporation does not mean that the corporate entity is a fraud or the alter-ego of the stockholder); Steinhardt v. Banks, 511 So. 2d 336, 339 (Fla. 4th DCA 1987) (holding that improper conduct is established where a corporation is a mere device or sham to accomplish some ulterior purpose, or to evade some statute, or to accomplish some fraud or illegal purpose, or where the corporation was employed by stockholders for fraudulent or misleading purposes).

Van Eck also ignores the procedural differences between this case and Woods. In Woods, the plaintiff attempted to pierce the corporate veil of a *party* to the action. Here, however, Swedtel AB is a garnishee, not a party. Therefore, Woods does not apply to this case.

**B.**   <u>**Van Eck's "New" Allegations Do Not Establish Improper Conduct**</u>

In an attempt to establish "proof" of improper conduct, Van Eck argues, illogically, that because Swedtel AB characterized money transfers to Swedtel, Inc. as payment for "agreed consultancy," Swedtel AB misrepresented the nature of the transfers.  (Van Eck's Opposition Memorandum at 12.)  It contends that because Swedtel AB denied having any contracts with Swedtel, Inc., the transfers were, in actuality, for "financial assistance" to Swedtel, Inc. (Id.)  In support of this contention, Van Eck relies on two exhibits:  (1) some fax transmittals from Swedtel, Inc. to Swedtel AB asking for financial assistance and (2) a "Summary of Financial Transactions" that describes certain transactions as payment of invoices from Swedtel, Inc. for "agreed consultancy."

But these "allegations" and documents do not establish any wrongdoing.  At most, they show only that Swedtel AB transferred money to Swedtel, Inc., a fact not in dispute.  Contrary to Van Eck's contention, the *manner* in which Swedtel AB internally characterized its transfers does not mean that it formed or used Swedtel, Inc. for an improper purpose.  Rather, the term "agreed consultancy" is just a label Swedtel AB used to describe its business transactions.

By transferring money to Swedtel, Inc., Swedtel AB *helped* Swedtel, Inc. meet its financial obligations.  As a letter attached as Exhibit 6 to Van Eck's opposition memorandum shows, Swedtel AB "unconditionally guarantee[d] any and all overdrafts of the captioned accounts" for Swedtel, Inc.  Does Van Eck seriously contend that by providing financial support to Swedtel, Inc. and by guaranteeing overdraft protection, Swedtel AB somehow intended to *mislead* or *deceive* creditors?  If anything, Van Eck's "evidence" shows that Swedtel AB helped its subsidiary to avoid any difficulty with creditors.

Thus, Van Eck has failed to show any wrongdoing on the part of Swedtel AB and has not alleged any facts demonstrating that Swedtel AB formed or used Swedtel, Inc. to mislead creditors or to perpetuate a fraud upon them.  Nor can it.  This is a garnishment action initiated by Van Eck to obtain assets belonging to the

Nicaraguan government.  It has not sued Swedtel AB for wrongful conduct and there is no evidence to suggest that Swedtel AB engaged in wrongful conduct. Without allegations and proof of actual wrongdoing, the mere fact that Swedtel, Inc. relied on its parent corporation for financial support is not sufficient to subject Swedtel AB to the personal jurisdiction of this Court under an alter-ego theory of jurisdiction.

### POINT III

**BECAUSE VAN ECK FAILED TO SATISFY THE REQUIREMENTS FOR AN ALTER-EGO THEORY OF JURISDICTION, THERE IS NO BASIS FOR THIS COURT TO EXERCISE PERSONAL JURISDICTION OVER SWEDTEL AB, AND THEREFORE, IT SHOULD DISMISS, WITH PREJUDICE, VAN ECK'S SECOND AMENDED MOTION**

Having again failed to satisfy the requirements for subjecting Swedtel AB to the personal jurisdiction of this Court under an alter-ego theory of jurisdiction, despite having engaged in jurisdictional discovery, Van Eck has not established any basis to invoke this Court's jurisdiction over Swedtel AB.  Van Eck relied exclusively on the alter-ego theory of jurisdiction and did not allege any facts to support jurisdiction under Florida's long-arm statute, section 48.193, Florida Statutes.  It also failed to demonstrate whether the exercise of personal jurisdiction would comport with the due process requirements of the Fourteenth Amendment.

Therefore, Van Eck's Second Amended Motion for Issuance of Writ of Garnishment is completely devoid of any allegations that would support personal jurisdiction under Florida's long arm statute.  To the extent this Court holds that Van Eck has failed to establish the requirements for an alter-ego theory of jurisdiction, it must dismiss the Second Amended Motion for Issuance of Writ of Garnishment because Van Eck has failed to demonstrate any basis upon which to subject Swedtel AB to this Court's jurisdiction.  See McFadden Ford, Inc., 766 So. 2d at 243 (dismissing complaint against non-resident corporation where plaintiff failed to allege or prove that corporation had formed or used domestic subsidiary for

improper purpose and plaintiff had not alleged any facts to bring non-resident corporation within any portion of Florida's long arm statute).

Moreover, because Van Eck has now had the opportunity to engage in jurisdictional discovery but has not provided this Court with any significantly greater information, this Court should dismiss Van Eck's motion with prejudice. Van Eck has now had three attempts to establish personal jurisdiction over Swedtel AB and, having failed the previous three attempts, is not entitled to a fourth.

## CONCLUSION

This Court should dismiss the Second Amended Motion for Writ of Garnishment because Van Eck has not satisfied its burden of establishing an alter-ego theory of jurisdiction. Despite the disclosure of thousands of pages of documents and the expenditure of thousands of dollars in attorney's fees, Van Eck has not produced any evidence that materially adds to the factual allegations and arguments in its first two motions for writ of garnishment. Thus, Van Eck's second amended motion and supporting memorandum fail to allege facts sufficient to establish that Swedtel, Inc was the alter-ego of Swedtel AB or that Swedtel AB formed or used Swedtel, Inc. for an improper or misleading purpose. Having had three bites at the jurisdictional apple, Van Eck is not entitled to a fourth. This Court should dismiss Van Eck's motion, with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Garnishee Swedtel AB
One East Broward Boulevard
Suite 1300
Fort Lauderdale, Florida 33301
Tel. (954) 525-1000
Fax (954) 463-2030

By: _____
Brian K. Hole
Fla. Bar No. 0019968
Cathy A. Williams
Fla. Bar No. 0088862

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that on May 12, 2003, a true and correct copy of the foregoing was furnished by U.S. Mail to:  Isaac Mitrani, Esq., Attorney for Plaintiff, Mitrani, Rynor, Adamsky & Macaulay, P.A., 2200 Suntrust International Center, One Southeast Third Avenue, Miami, Florida, and K. Chris Todd, Kellogg, Huber, Hansen, Todd, & Evans, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C.

HOLLAND & KNIGHT LLP
Attorneys for Garnishee Swedtel AB
One East Broward Blvd.
Suite 1300
Fort Lauderdale, Florida 33301
Tel.:  (954) 525-1000
Fax.: (954) 463-2030

By: _____
     Brian K. Hole
     Fla. Bar No. 0019968
     Cathy A. Williams
     Fla. Bar No. 0088862

FTL1 #625160 v2